### SCHOOL BOARD v. COMMON COUNCIL.

(Second Division. Nome. January 7, 1905.)

SCHOOLS AND SCHOOL DISTRICTS — SUPPORT — APPORTIONMENT OF FUNDS—DUTY.

   The common council of incorporated towns in Alaska has no authority to apportion the public funds for the support of the town and the school district; that duty devolves upon the District Court of Alaska, under the terms of section 4 of the act of Congress of March 2, 1903 (chapter 978, 32 Stat. 946).

This is an action begun by the school board of the Nome school district against the common council of the city of Nome, Alaska, praying that a writ of mandamus issue against the defendant for the purpose of compelling it to turn over to the treasurer of the school board of the Nome school district all

moneys in defendant's hands available for school purposes.

The petition for the alternative mandamus alleges that the city of Nome is a municipal corporation of the District of Alaska; that on August 15, 1904, the common council of said city created a school district coextensive in area with the corporate limits of the said city, designating it as the "Nome School District"; that the duly elected and qualified members of said school board as now constituted elected one of its members, Harry Story, the treasurer of said Nome school district, and that he gave his bond to said school district in such sum as was directed by the said common council, conditioned that he would honestly disburse and account for all moneys that might come into his hands as such treasurer; that the said common council did during the year 1904 collect from license moneys, taxes, etc., the total sum of $60,655.84, which sum is available for school and municipal purposes; that the defendant is rapidly dissipating said funds, and unless an order is made by this court directing the transference of the sum of $9,461.20 to the treasurer of said school district, that all the moneys now available for school purposes will be dissipated, and the public schools of the city of Nome will be thereby compelled to suspend; that the said common council has provided two suitable public school buildings, and that there are in actual attendance at said buildings more than 150 pupils resident in said Nome school district; that the said school board has hired necessary teachers to the number of seven, and has contracted for the heating and lighting of said schoolhouses, and that the obligations so incurred amount to the sum of $11,461.20 for the maintenance of said schools to April 1, 1905; that on October 29, 1904, the school board made a correct statement of the amount of money necessary for the maintenance of the said two schools, and determined that the sum of $11,461.20 is necessary for the maintenance of said schools for the period beginning October 1, 1904, and ending April 1, 1905; that said estimate was sub-

mitted by the plaintiff on the 31st day of October, 1904, to said council at a regular meeting thereof, and demand made that the said defendant transfer to the treasurer of said school board said sum of $11,461.20, to be used by the plaintiff for the maintenance of said schools; that the defendant failed and refused to transfer the full sum of $11,461.20, but did transfer $2,000 to said treasurer; that said sum of $2,000 is grossly inadequate to maintain the public schools of the Nome school district for the period between October 1, 1904, and April 1, 1905.

The petition, as its final allegation of facts, states that the plaintiff has not a plain, speedy, and adequate remedy in the ordinary course of law.

The relief asked is a writ of mandamus commanding the transfer of $9,461.20 by said common council to the treasurer of the Nome school district, or that it show cause before said court why it has not done so; and that the said defendant return said writ, with its certificate annexed of having done as commanded, or of the cause of its omission thereof at the time fixed in said writ.

The return of said writ made by said defendant denies the dissipation of the funds available for school and municipal purposes; admits that a request was made of the defendant by the plaintiff for a transfer of $11,461.20, but denies that said estimate of $11,461.20 was a correct estimate of the amount of money necessary for the maintenance of the public schools of said school district for the time from October 1, 1904, until April 1, 1905; admits that there is available of the funds of said city for municipal and school purposes a sum largely in excess of $11,461.20; admits that $2,000 is an inadequate sum for the maintenance of the public schools for the period from October 1, 1904, until April 1, 1905.

In the affirmative answer of the defendant it is alleged that, in the exercise of the discretion of the common council, the

2 A.R.—23

bond of the treasurer of the school district was fixed at $10,-000, and the school treasurer accordingly gave bond in that amount, which was approved by the common council; that the council could not comply with the request of plaintiff for a transfer of money without violating the provisions of section 4, subd. 12, of the act of Congress entitled "An act to amend and codify the laws relating to municipal corporations in the District of Alaska," approved April 28, 1904, c. 1778, 33 Stat. 532, and could not comply therewith except by transferring an amount of money in excess of the amount secured by said bond; that no application for an increase in the amount of said bond has ever been made by said school board or its treasurer.

The answer further alleges that the expenditures of the school board for teachers is excessive and unnecessary in the maintenance of the efficiency of said schools; that the night school maintained by the board is unwarranted and unnecessary; that the amount paid for janitor hire at both school buildings is excessive; that the school board has without authority of law fixed a salary of $100 per month for each month of the year for the clerk of said board; that the school board has without authority of law expended large sums of money for school books and supplies, which items are included in its estimate for the funds necessary to maintain said schools; that since August 22, 1904, the board has received from the council $6,000, which sum does not include the item of $2,000 already mentioned; that at no time has the board been without funds necessary for the proper maintenance of said schools, and defendant will continue to transfer from time to time sufficient money to properly maintain said schools and the efficiency thereof; and further, that the defendant has at all times mentioned in the alternative writ exercised its discretionary power in providing the necessary funds for the maintenance of said schools, and that said writ does not state facts sufficient to

constitute a cause for the issuance of a peremptory writ of mandamus.

The defendant further requests the written opinion of the court in answer to the question:

"Is it within the power of the school board to dictate what constitutes the necessary funds for the maintenance of schools? Or is such power vested in the common council of the municipality of Nome, under the act of April 28, 1904?"

A. J. Bruner, for plaintiff.

Geo. D. Schofield, City Atty., for defendant.

MOORE, District Judge.   The contention between the parties to this proceeding, as appears from the petition and return to the writ of alternative mandamus, grows out of their different interpretations of the language of part of the 12th subsection of section 4 of the act of Congress entitled "An act to amend and codify the laws relating to municipal corporations in the district of Alaska," which act was approved April 28, 1904 (chapter 1778, 33 Stat. 531).

Section 4 of said act contains an enumeration of the powers of the common councils of municipal corporations created under the laws of Congress for Alaska.   The ninth subsection of said section specially defines the powers of a council relative to the public schools within the municipality, and gives the common council the power "to assess, levy and collect a general tax for school and municipal purposes, not to exceed two per centum of the assessed valuation upon all real and personal property."

The twelfth subsection declares that the common council of a municipal corporation shall be vested with the power—

"To establish one or more school districts, to provide the same with suitable school houses, and to provide the necessary funds for the maintenance of schools, but such school districts and schools when established shall be under the supervision and control of a school board of three members, consisting of a director, a treasurer and a

clerk to be elected annually, by the vote of all the adults who are citizens of the United States or who have declared their intention to become such and who are residents of the school district. * * *

"All money available for school purposes except for the construction and equipment of school houses and the acquisition of sites for same shall be transferred to the treasurer of said school board, shall be expended under the direction of said board, and the treasurer of said board shall be the custodian of said money, and he shall before entering on the duties of his office give his bond with sufficient sureties to the school district in such sum as the common council may direct and subject to its approval but not less than twice the amount that may come into his hands as treasurer, conditioned that he will honestly and faithfully disburse and account for all money that may come into his hands as such treasurer.

"The said board shall have the power to hire and employ the necessary teachers, to provide for heating and lighting the school house and in general to do and perform everything necessary for the due maintenance of a proper school."

Section 6 of said act contains the following provision in respect to the duties of the town treasurer:

"The treasurer appointed by the council shall be the custodian of all the moneys of the town: provided, that said treasurer shall pay over to the treasurer of the school district all moneys available for the maintenance of schools."

In the parts of the act just quoted are enumerated all the powers and duties of the common council of an incorporated town in Alaska in reference to public schools and their maintenance.

These powers and duties are: (1) To assess, levy, and collect a general tax for school and municipal purposes upon all real and personal property within the corporate limits, and the amount of which shall not be in excess of two per centum of the assessed valuation of said property, and to receive all license moneys for school and municipal use from the clerk of the district court. (2) To establish one or more school districts, to provide the same with suitable schoolhouses, and to provide the necessary funds for the maintenance of the schools.

(3) To transfer all money available for school purposes, not employed in the construction and equipment of schoolhouses and in the purchase of sites for schoolhouses, to the treasurer of the school board. (4) To determine and fix the amount of the school treasurer's bond, and also to approve his bond; the amount of the bond to be graded by the amount to be transferred, under direction of the common council, to the school board's treasurer.

The powers vested in the school board by said act are: (1) To supervise, direct, and control said schools when established by the common council; (2) to appoint a treasurer of the school board; (3) to expend the funds available for the maintenance of said schools; (4) to hire and employ the necessary teachers; (5) to provide for heating and lighting the schoolhouses; and (6) in general, to do and perform everything necessary for the due maintenance of the proper schools.

This analysis of the express powers of the two bodies (the common council and the school board of an incorporated town) unfolds the proposition that while it is the duty of the common council to provide "the necessary funds for the maintenance of the schools," and "to pay over to the treasurer of the school board all money available for school purposes," yet the act contains no words granting to either the council or the school board the authority to decide, either what shall be the amount of the necessary funds for maintaining the schools, or the amount of all the money available for school purposes, or, as in section 6, the amount of "all moneys available for the maintenance of schools."

By section 4 of the act of Congress approved March 2, 1903, c. 978, 32 Stat. 946, entitled "An act amending the Civil Code of Alaska, providing for the organization of private corporations, and for other purposes," Congress amended section 203 of chapter 21 of title 3 of an act entitled "An act making further provision for a civil government for Alaska

and for other purposes," approved June 6, 1900, c. 786, 31 Stat. 521.

This amendatory act of 1903 directs:

"That all license moneys provided for by act of Congress approved March 3, 1899, entitled, 'An act to define and punish crimes in the District of Alaska and to provide a Code of Criminal Procedure for said district' and any amendments made thereto, required to be paid by any resident, person, or corporation for business carried on within the limits of any incorporated town shall be paid over by said clerk [of the district court] to the treasurer of such corporation to be used for municipal and school purposes in such proportions as the court may order, but not more than fifty per centum nor less than twenty-five per centum thereof shall be used for school purposes."

This enactment, bestowing upon the District Court for the division in which an incorporated town is situated the power and authority to apportion the amount of such license moneys which shall be used for school purposes, remained the law for Alaska until the enactment of the later act of April 28, 1904, and, if not repealed by the later act, is still the law upon the subject.

Does, then, the later act of 1904 operate as a repeal of that portion of the amendatory act of 1903 just quoted? As before stated, the act of 1904 contains no language which may be read as conferring in express terms upon either the common council of an incorporated town or upon a school board for a district within the limits of an incorporated town the discretionary power to determine how much of the funds specially devoted by law to school and municipal purposes shall be used for school purposes. I have earnestly tried to discover a grant of this power by necessary implication from the language of the act taken as a whole, and find no clear warrant for the belief that Congress meant to give this power to either of the contending bodies. The arguments used to support the theory that the authority is reposed in one body are about as strong as the consideration brought in support of the opposite theory —that it is a function of the other. Unless this authority ap-

pears in the law to belong to the plaintiff beyond all question, it could not, in any event, have the relief it asks in this action.

The act of 1904 disclosing no warrant for the exercise of the authority in question by either of the parties to this action, the inquiry arises, has the authority been lodged elsewhere by any prior enactment upon the same subject? By the act of 1903 it was made the duty of the judge of the District Court of the territory including the municipality to exercise this function of deciding what amount of the license fund could be used by the school board for the support of schools. The repealing clause of the act of April 28, 1904 (section 8, c. 1778, 33 Stat. 534), is as follows:

"All acts and parts of acts inconsistent with this act are to the extent of such inconsistency hereby repealed, and the provisions of this act shall apply to and govern all municipal corporations heretofore created in the District of Alaska."

The act of 1904 has been shown to give no indication of an intent that either party to this action shall have the power we are now considering, and moreover it is silent upon the question. In this state of things we are fully warranted in the decision that Congress meant to leave the power where it was lodged by the act of 1903, to wit, in the District Court whose jurisdiction includes the municipal territory. The provisions of the act of 1903, as the facts of this case present themselves, must operate in full life, in the absence of any declaration upon the subject in the act of 1904. There is nothing in the act of 1904 with which the provision of the former act could by any possibility by inconsistent. The court thus reaches the conclusion that the plaintiff has not shown a good cause of action, and the mandamus must be refused, and the action dismissed.